**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BENEDICT HUBER,<br><br>Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## STATE FARM FIRE AND CASUALTY COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, State Farm Fire and Casualty Company ("State Farm"), by and through its counsel, Goldberg Segalla LLP, files this Declaratory Judgment Complaint against Defendant Benedict Huber ("Huber"), and avers the following:

### I.  The Parties

1. State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois.

2. Upon information and belief, Huber resides, and at all times mentioned herein resided, at 118 Pleasant View Ct., Pittsburgh, Pennsylvania.

### II.  Jurisdiction and Venue

3. The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

4. Based upon information and belief, State Farm is diverse in citizenship from Huber.

5. As a domiciliary of Pennsylvania, Huber is subject to general personal jurisdiction in Pennsylvania.

6. This litigation arises from an insurance coverage dispute among State Farm and

Huber related to a personal injury action captioned: *Jane Doe 1 and Jane Doe 2 v. Benedict A. Huber, et al.*, pending in the Court of Common Pleas, Allegheny County, No. GD-26-002383 (the "Underlying Action"). A copy of the Complaint filed in the Underlying Action (the "Underlying Complaint") is attached hereto as Exhibit A.

7.      The Underlying Complaint alleges sexual misconduct perpetrated by Huber against Jane Doe 1, who was a minor at the time.

8.      State Farm issued a primary insurance policy and an umbrella policy to Huber, each with limits of insurance exceeding $75,000.

9.      The Underlying Action asserts six (6) counts against Huber, with each of those counts alleging damages in "an amount in excess of $50,000, together with interest, costs, punitive damages, and such other relief as [the] Court deems appropriate."

10.     This Court has subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.

11.     Venue in the United States District Court for the  Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this declaratory judgment action took place in this judicial district. In addition, the Underlying Action that forms the basis for this declaratory relief is taking place in Allegheny County, Pennsylvania, which is located in this judicial district and division.

12.     Further, upon information and belief, the Defendants in this action are all Pennsylvania residents residing in Allegheny County, Pennsylvania, which is located in this judicial district and division.

13.     Moreover, the policies of insurance at issue in this action were issued to Huber in Pittsburgh, Pennsylvania, which is located in this judicial district and division.

2

**III.    Facts Giving Rise to this Dispute**

14.    Jane Doe 1 and Jane Doe 2 sued Huber, LRP&MKL Enterprises, Inc. f/k/a The Huber Group, Inc. individually and t/d/b/a The Huber Group, LP (the "Huber Group"), South Hills Country Club ("South Hills"), Frank S. Hamschin ("Hamschin"), David Frost ("Frost"), and Debbie Lockhart ("Lockhart") (collectively, "Defendants") in the Underlying Action.

**A.    The Allegations in the Underlying Complaint**

15.    The Underlying Complaint alleges that in 2023, Jane Doe 1 began working for South Hills as a Banquet Server. Exhibit A at ¶ 28.

16.    The Underlying Complaint further alleges that on August 26, 2024, South Hills held a special event for the police, and that Huber and others, many of whom are believed to have been police officers, attended this event (the "Event"). *Id.* at ¶ 37.

17.    The Huber Group, of which Huber is the Founder and RPA, allegedly "appointed Huber to attend and/or knew that Huber would be attending the Event as [Huber] Group's corporate representative." *Id.* at ¶¶ 9, 38.

18.    It is alleged, that at all times relevant to the Underlying Action, Huber was "acting within the course and scope of his employment with and/or his ownership interest in the [Huber] Group, and in furtherance of the business operations and for the financial and other gain and benefit of the [Huber] Group." *Id.* at ¶ 10.

19.    The Underlying Complaint further alleges that Huber was a member of South Hills, individually and on behalf of the Huber Group, and that it is believed that the Huber Group often sponsored events at South Hills to advertise, market, and generate business for the Huber Group, and as a result some or all of Huber's dues and expenses at South Hills were funded by the Huber Group. *Id.* at ¶¶ 13, 15-16.

20.    According to the Underlying Complaint, on the date of the Event, and during the

Event, Huber drank beer, and possibly other alcoholic beverages, and became visibly intoxicated. *Id.* at ¶ 51.

21. Allegedly, Lockhart, who served as South Hill's Private Events Director, directed Jane Doe 1 to serve a beer to Huber, who was standing with a group of other men, and then shortly thereafter Lockhart required Jane Doe 1 to serve Huber a second beer, who was then sitting at a table on the patio along with at least two other individuals who were believed to be police chiefs. *Id.* at ¶¶ 19, 54-55.

22. As Jane Doe 1 served the second beer to Huber, Huber allegedly said, "Thank you, Honey", turned his chair to get close to Jane Doe 1, and then "intentionally slid his arm between Jane Doe 1's legs, touched Jane Doe's buttocks and vagina, and kissed her neck in a sexual manner" (the "Sexual Assault"). *Id.* at ¶¶ 56-57.

23. Jane Doe 1 alleges that at no point did she authorize Huber to touch her in any way, especially not in a sexual manner. *Id.* at ¶ 58.

24. It is further alleged that following the Sexual Assault, Jane Doe 1 became "immediately shocked, appalled, and emotionally distressed." *Id.* at ¶ 62.

25. Additionally, the Underlying Action alleges that at the time of the Sexual Assault, Jane Doe 1 was a minor, and was in the custody of Jane Doe 2, her mother. *Id.* at ¶¶ 5, 78.

26. According to the Underlying Complaint, on September 17, 2024, as a result of the Sexual Assault, Huber was arrested and then charged with Corruption of a Minor, Indecent Assault, and Harassment (the "Criminal Charges"). *Id.* at ¶ 86.

27. On May 20, 2025, Huber purportedly entered pleas of nolo contendre to disorderly conduct and harassment charges, and, was further sentenced by the Honorable Elliot C. Howsie, to pay $600 in fines, perform 50 hours of community service, and refrain from contact with Jane Doe 1. *Id.* at ¶ 94.

28. In the Underlying Action, it is alleged that Huber's actions resulted in severe, serious, and permanent injuries, damages, losses, and harm to Jane Doe 1 and Jane Doe 2, all of which relate to emotional distress and/or stem from Jane Doe 1 being a victim of sexual assault. *Id.* at ¶¶ 95-96.

29. In Count I, Jane Doe 1 asserts a claim of common law assault against Huber, alleging that Huber's conduct, as set forth in the Underlying Complaint, constitutes an assault and was the direct, proximate, factual, and legal cause of her alleged injuries, damages, losses, and harm. *Id.* at ¶¶ 100-101.

30. In Count II, Jane Doe 1 asserts a claim of common law battery, alleging that Huber's conduct, as set forth in the Underlying Complaint, constitutes a battery of Jane Doe 1 and was the direct, proximate, factual, and legal cause of her alleged injuries, damages, losses, and harm. *Id.* at ¶¶ 105-106.

31. In Count III, asserted against Huber, Jane Doe 1 asserts an intentional infliction of emotional distress claim, contending that Huber's conduct was intentional and intended to and did cause physical injuries and emotional distress to Jane Doe 1, and that said conduct was the direct, proximate, factual, and legal cause of her alleged injuries, damages, losses, and harm. *Id.* at ¶¶ 109, 111.

32. Count IV asserts a claim against Huber for negligent infliction of emotional distress by Jane Doe 1, wherein it is alleged that while Huber's conduct and the Sexual Assault are believed to be intentional, at a minimum, his conduct was negligent, careless, and reckless. *Id.* at ¶ 114.

33. Count IV further alleges that Huber knew and/or should have known that if he physically contacted Jane Doe 1, and in particular, if he committed the Sexual Assault, that it would result in Jane Doe 1 suffering physical injuries and emotional distress that she suffered, and that Huber's conduct was the direct, proximate, factual, and legal cause of Jane Doe 1's injuries,

damages, losses, and harm. *Id.* at ¶¶ 116, 118.

34.     In Count V, Jane Doe 1 contends that her injuries, damages, losses, and harm, as alleged in the Underlying Complaint, were the direct, proximate, and legal result of Huber's negligence, carelessness, and recklessness, as follows:

    a. In consuming excessive quantities of alcohol that resulted in him being unable to control himself and his actions;
    b. In allowing himself to become visibly intoxicated and unable to control himself and his actions;
    c. In physically touching and kissing Jane Doe 1 without permission or authority to do so;
    d. In intentionally, recklessly, and/or negligently sexually assaulting Jane Doe 1;
    e. In intentionally, recklessly, and/or negligently assaulting and battering Jane Doe 1;
    f. In intentionally, negligently, and recklessly causing Jane Doe 1 to suffer the injuries, damages, losses, and harm as set forth in the Underlying Complaint; and
    g. In intentionally, negligently, and recklessly causing Jane Doe 1 to suffer great pain, suffering, inconvenience, embarrassment, and mental anguish.

*Id.* at ¶ 121.

35.     Count V further alleges that Huber's conduct was the direct, proximate, factual, and legal cause of Jane Doe 1's injuries, damages, losses, and harm. *Id.* at ¶ 122.

36.     In Count XIII, Jane Doe 2 alleges negligence, carelessness, and recklessness against Huber, and in particular that Huber knew or should have known that if he committed the Sexual Assault, it would not only result in injuries, damages, losses, and harm to Jane Doe 1, but would also cause her loved ones, specifically her immediate family members, to suffer injuries, damages, losses, and harm. *Id.* at ¶ 197.

37.     In particular, in Count XIII, Jane Doe 2 contends that her injuries, damages, losses, and harm, as alleged in the Underlying Complaint, were the direct, proximate, and legal result of Huber's negligence, carelessness, and recklessness, as follows:

    a. In consuming excessive quantities of alcohol that resulted in him being unable to control himself and his actions;
    b. In allowing himself to become visibly intoxicated and unable to control himself and his actions;
    c. In physically touching and kissing Jane Doe 1 without permission or authority to do so;
    d. In intentionally, recklessly, and/or negligently sexually assaulting Jane Doe 1;

e.  In intentionally, recklessly, and/or negligently assaulting and battering Jane Doe 1;

f.  In intentionally, negligently, and recklessly causing Jane Doe 2 to suffer the injuries, damages, losses, and harm as set forth in the Underlying Complaint; and

g.  In intentionally, negligently, and recklessly causing Jane Doe 2 to suffer great pain, suffering, inconvenience, embarrassment, and mental anguish.

*Id.* at ¶ 199.

38.    In connection with each of the Counts in the Underlying Complaint, asserted by Jane Doe 1 and Jane Doe 2 against Huber, intentional, malicious, outrageous, and/or reckless indifferent conduct is alleged, and punitive damages are sought. *Id.*

39.    The remaining counts in the Underlying Complaint are not asserted against Huber.

**B.    The State Farm Primary Policy**

40.    State Farm issued policy number 38-E4-U146-6 to Benedict & Patricia L. Huber, for the term beginning December 1, 2023 and ending on December 1, 2024 (the "Primary Policy"). A copy of the Primary Policy is attached to this Complaint as Exhibit B.

41.    The Primary Policy provides homeowners liability coverage to Huber according to Form HW-2138, which includes the following insuring agreement:

> **SECTION II – LIABILITY COVERAGES**
>
> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, **we** will:
>
> 1. pay up to **our** limit of liability for the damages for which the **insured** is legally liable.  **We** will not pay for criminal restitution; and
>
> 2. provide a defense at **our** expense by counsel of **our** choice.  **We** may make any investigation and settle any claim or suit that **we** decide is appropriate.  **Our** obligation to defend any suit ends when the amount **we** pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals **our** limit of liability.  **We** will not provide a defense to any **insured** for criminal prosecution or proceedings.
>
> …

42.    The Primary Policy includes the following definitions[1]:

2. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

**Bodily injury** does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person; or

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

…

4. **"business"** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured's** principal means of livelihood. Profit and profit motive are irrelevant.

**Business** does not include:

a. volunteer activities for a not-for profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the **insured**;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, law mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to

---

[1] Throughout the Primary Policy, defined words and phrases are printed in bold.

the date of the loss; or

e. ownership of the **residence premises** by the person or organization shown in the **Declarations** as Additional    Insured.

…

9.**"insured"** means:

a. **you**; or

b. **your relatives**;

…

13.**"occurrence"**, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence**.

…

43.    The Primary Policy includes the following exclusions:

1. Coverage L and Coverage M do not apply to:

a.    **bodily injury** or **property damage** that:

(1) was a result of a:

(a) willful and malicious; or

(b) criminal;

act or omission of the **insured**;

(2) was intended by the **insured**; or

(3) would have been expected by the **insured** based on a reasonable person standard.

However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

9

(1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

(2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

(3) **insured** lacked the mental capacity to control his or her conduct;

(4) **insured** was not charged with or convicted or a criminal act or omission; or

(5) **insured** was impaired by drugs and alcohol;

b.    **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

…

n.    **bodily injury** or **property damage** arising out of the actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the **insured**;

## C.    The State Farm Umbrella Policy

44.    State Farm issued a Personal Liability Umbrella Policy to Benedict & Patricia L. Huber, bearing policy number 38-E4-Y296-7 for the term beginning December 1, 2023 and ending on December 1, 2024 (the "Umbrella Policy"). A copy of the Umbrella Policy is attached to this Complaint as Exhibit C.

45.    Subject to its own, terms, conditions, exclusions, and limitations, the Umbrella Policy provides Personal Liability coverage with limits of $1 Million.

46.    The Umbrella Policy provides personal liability umbrella coverage to Huber according to form FP-7950.2, which includes the following insuring agreement:

10

**COVERAGES**

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage L Limit o Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

**Defense**

If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy. **We** have no duty to defend any claim or suit after **we** tender, deposit in court, or pay the amount due under this policy.

**Our Rights**

**We** have the right to:

a.  investigate, negotiate and settle any claim or suit that **we** decide is appropriate;

b.  defend the **insured** in any claim or suit, by counsel of **our** choice; and

c.  appeal any award or legal decision.

47.     The Umbrella Policy's main coverage form also includes the following relevant definitions[2]:

2. **"bodily injury"** means physical injury, sickness, or disease to a person, including death resulting therefrom.

**Bodily injury** does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person;

---

[2] Throughout the Umbrella Policy, defined words and phrases are printed in bold.

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury or any resulting physical injury unless it arises out of actual physical injury to some person; or

d. **personal injury**.

3. **"business"** means a trade, profession or occupation, including farming.

…

6. **"insured"** means:

a. you and your relatives whose primary residence is your household;

…

7. **"loss"** means:

a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

b. the commission of an offense which first results in personal injury during the policy period. A series of similar or related offenses is considered to be one **loss**.

…

13. **"required underlying insurance"** means to following types of insurance policies when shown on the declarations page:

…

c. "**Personal Residential Liability**" means **your** policy which provides coverage for liability arising out of the ownership, maintenance or use of a premises as your residence.

…

f. "**Business/Office Premises Liability**" means **your** policy which provides coverage for liability arising out of **your business** or the ownership, operation, maintenance or use of an office solely occupied by **you**.

…

14. **"retained limit"** means the sum of:

a. the amount paid or payable by any other insurance policy for the **loss**;

b. the amount the **insured** is required to pay for the **loss** as provided in the MAINTAINING REQUIRED

UNDERLYING INSURANCE SECTION of this policy; and

c. the amount shown on the declarations page as the "Self- Insured Retention". This amount only applies if an **insured** has no **required underlying insurance** or an **insured's required underlying insurance** does not provide any coverage for the **loss**.

…

48.     Additionally, the Umbrella Policy includes the following exclusions:

There is no coverage under this policy for any:

…

1. **loss** arising out of alleged or actual:

    a. sexual harassment;

    b. sexual molestation; or

    c. discrimination prohibited by law;

    by the **insured**;

    …

6. **loss** arising out of any **insured's business property** or **business** pursuits of any **insured**, unless:

    a. (1) the **loss** does not involve any land motor vehicle or watercraft; and

    (2) **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page;

    …

14. **bodily injury** or **property damage** which is:

    a. either expected or intended by the **insured**; or

    b. the result of any willful and malicious act of the **insured**;

    …

**D.     State Farm's Reservation of Rights**

49.     On or about October 3, 2025, State Farm issued a reservation of rights letter to Huber in which it agreed to provide a defense to Huber, with respect to a draft Complaint that had not yet been filed in the Underlying Action, pursuant to a strict reservation of rights. A copy of

13

State Farm's October 3, 2025 letter is attached to this Complaint as Exhibit D.

50.    On or about May 26, 2026, State Farm issued a supplemental reservation of rights letter to Huber, in which it agreed to continue to provide a defense to Huber, with respect to the Underlying Complaint filed in the Underlying Action, pursuant to a strict reservation of rights. A copy of State Farm's May 26, 2026 letter is attached to this Complaint as Exhibit E.

51.    In both its October 3, 2025 and May 26, 2026 letters, State Farm advised Huber that it reserved its right to contest coverage for Huber with respect to the Underlying Action.

### COUNT I – DECLARATORY JUDGMENT – NO BODILY INJURY CAUSED BY AN OCCURRENCE ALLEGED UNDER THE PRIMARY POLICY

52.    State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

53.    The Underlying Action alleges that Huber is liable to Jane Doe 1 and Jane Doe 2 due to Huber's sexual assault of Jane Doe 1.

54.    To satisfy the Primary Policy's relevant insuring agreement, the Underlying Action must seek "bodily injury" or "property damage" caused by an "occurrence."

55.    The term "occurrence" is defined in the Primary Policy to mean the following:

> 13.**"occurrence"**, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:
>
> a. **bodily injury**; or
>
> b. **property damage**;
>
> during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence**.

56.    The intentional act of sexual assault is not an "occurrence."

57.    Therefore, the Underlying Action does not trigger the Primary Policy's relevant insuring agreement.

**WHEREFORE**, State Farm seeks judgment in its favor and against all others, including the following declaration:

a. State Farm has no duty to defend Huber in the Underlying Action under the Primary Policy;

b. State Farm has no duty to indemnify Huber in the Underlying Action under the Primary Policy; and

c. Any other relief the Court determines equitable or just.

## COUNT II – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR INTENTIONAL AND CRIMINAL ACTS UNDER THE PRIMARY POLICY

58. State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

59. The Primary Policy's Exclusion 1.a excludes coverage for "bodily injury" that was (1) a result of a willful and malicious or criminal act or omission of the insured; or (2) that was intended by the insured.

60. The Underlying Action alleges that Huber is liable to Jane Doe 1 and Jane Doe 2 due to Huber's sexual assault of Jane Doe 1 while she was a minor.

61. Sexual assault is an intentional act.

62. Moreover, under Pennsylvania law, the sexual assault by an adult of a minor raises a conclusive presumption that an insured intended to harm the victim, regardless of whether the insured was intoxicated.

63. Further, Huber's sexual assault of Jane Doe 1 resulted in Huber's arrest, the Criminal Charges, and Huber's subsequent entry of a plea of nolo contendere to charges of disorderly conduct and harassment.

64. Therefore, Exclusion 1.a applies and State Farm has no duty to defend or indemnify Huber under the Primary Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a.  State Farm has no duty to defend Huber in the Underlying Action under the Primary Policy;

b.  State Farm has no duty to indemnify Huber in the Underlying Action under the Primary Policy; and

c.  Any other relief the Court determines equitable or just.

### COUNT III – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR SEXUAL ACTS UNDER THE PRIMARY POLICY

65.    Stare Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

66.    The Primary Policy includes Exclusion 1.n, which bars coverage for "bodily injury" arising out of any actual, alleged, or threatened (1) sexual harassment, sexual molestation, or sexual misconduct; or (2) physical or mental abuse.

67.    All of the claims at issue in the Underlying Action arise out of the alleged inappropriate touching and the sexual assault of Jane Doe 1.

68.    Therefore, Exclusion 1.n applies and State Farm has no duty to defend or indemnify Huber under the Primary Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a.  State Farm has no duty to defend Huber in the Underlying Action under the Primary Policy;

b.  State Farm has no duty to indemnify Huber in the Underlying Action under the Primary Policy; and

c.  Any other relief the Court determines equitable or just.

16

## COUNT IV – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR BUSINESS PURSUITS UNDER THE PRIMARY POLICY

69.     State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

70.     The Primary Policy includes Exclusion 1.b., which bars coverage for "bodily injury" arising out of "business" pursuits of any insured.

71.     The Underlying Action alleges that at the time Huber sexually assaulted Jane Doe 1, he was "acting within the course and scope of his employment with and/or his ownership interest in the [Huber] Group, and in furtherance of the business operations and for the financial and other gain and benefit of the [Huber] Group." Exhibit A at ¶ 10.

72.     Therefore, Exclusion 1.b. applies and State Farm has no duty to defend or indemnity Huber under the Primary Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a.  State Farm has no duty to defend Huber in the Underlying Action under the Primary Policy;

b.  State Farm has no duty to indemnify Huber in the Underlying Action under the Primary Policy; and

c.  Any other relief the Court determines equitable or just.

## COUNT V – DECLARATORY JUDGMENT – NO ALLEGATIONS OF LOSS UNDER THE UMBRELLA POLICY

73.     State Farm incorporates the preceding paragraphs of this Complaint as thought set forth in full herein.

74.     The Underlying Action alleges that Huber is liable to Jane Doe 1 and Jane Doe 2 due to Huber's sexual assault of Jane Doe 1.

75. To satisfy the Umbrella Policy's insuring agreement, the Underlying Action must seek damages against an insured because of a "loss".

76. The term "loss" is defined in the Umbrella Policy to mean an accidental exposure resulting in "bodily injury" during the policy period.

77. The intentional act of sexual assault is not an accidental exposure.

78. Therefore, the Underlying Action does not trigger the Umbrella Policy's relevant insuring agreement.

**WHEREFORE**, State Farm seeks judgment in its favor and against all others, including the following declaration:

a. State Farm has no duty to defend Huber in the Underlying Action under the Umbrella Policy;

b. State Farm has no duty to indemnify Huber in the Underlying Action under the Umbrella Policy; and

c. Any other relief the Court determines equitable or just.

## COUNT VI – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR SEXUAL ACTS UNDER THE UMBRELLA POLICY

79. State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

80. The Umbrella Policy includes Exclusion 3, which bars coverage for "loss" arising out of alleged or actual (1) sexual harassment; or (2) sexual molestation, by the insured.

81. All of the claims at issue in the Underlying Action arise out of the alleged inappropriate touching and the sexual assault of Jane Doe 1.

82. Therefore, Exclusion 3 applies and State Farm has no duty to defend or indemnify Huber under the Umbrella Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others,

including the following declaration:

    a.  State Farm has no duty to defend Huber in the Underlying Action under the Umbrella Policy;

    b.  State Farm has no duty to indemnify Huber in the Underlying Action under the Umbrella Policy; and

    c.  Any other relief the Court determines equitable or just.

## COUNT VII – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR BUSINESS PURSUITS UNDER THE UMBRELLA POLICY

83.    State Farm incorporates the preceding paragraphs of this Complaint as thought set forth in full herein.

84.    The Umbrella Policy includes Exclusion 6, which bars coverage for "loss" arising out of any "business" pursuits of any insured, unless "required underlying insurance" applies to the "loss" and provides coverage for said "loss" in the amount listed as Minimum Underlying Limits on the declarations page of the Umbrella Policy.

85.    The Umbrella Policy defines the term "business" to mean a trade, profession, or occupation, including farming.

86.    "Required underlying insurance" is defined in the Umbrella Policy to mean certain types of insurance policies when shown in the declarations page of the Umbrella Policy, including, in relevant part, policies for "Personal Residential Liability", meaning Huber's policy covering liability arising out of the ownership, maintenance or use of a premises as Huber's residence.

87.    The Underlying Action alleges that at the time Huber sexually assaulted Jane Doe 1, he was "acting within the course and scope of his employment with and/or his ownership interest in the [Huber] Group, and in furtherance of the business operations and for the financial and other gain and benefit of the [Huber] Group." Exhibit A at ¶ 10.

88.    Further, as set forth in the preceding counts, the Primary Policy does not apply to

the Underlying Action, and thus no exception to the exclusion applies.

89.     Therefore, Exclusion 6 applies and State Farm has no duty to defend or indemnity Huber under the Umbrella Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a.  State Farm has no duty to defend Huber in the Underlying Action under the Umbrella Policy;

b.  State Farm has no duty to indemnify Huber in the Underlying Action under the Umbrella Policy; and

c.  Any other relief the Court determines equitable or just.

## COUNT VIII – DECLARATORY JUDGMENT – COVERAGE EXCLUDED FOR INTENTIONAL ACTS UNDER THE UMBRELLA POLICY

90.     State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

91.     The Umbrella Policy's Exclusion 14. excludes coverage for "bodily injury" that was (1) either expected or intended by the insured; or (2) the result of any willful and malicious act of the insured.

92.     The Underlying Action alleges that Huber is liable to Jane Doe 1 and Jane Doe 2 due to Huber's sexual assault of Jane Doe 1 while she was a minor.

93.     Sexual assault is an intentional act.

94.     Moreover, under Pennsylvania law, the sexual assault by an adult of a minor raises a conclusive presumption that an insured intended to harm the victim, regardless of whether the insured was intoxicated.

95.     Therefore, Exclusion 14 applies and State Farm has no duty to defend or indemnify Huber under the Umbrella Policy.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a. State Farm has no duty to defend Huber in the Underlying Action under the Umbrella Policy;

b. State Farm has no duty to indemnify Huber in the Underlying Action under the Umbrella Policy; and

c. Any other relief the Court determines equitable or just.

## COUNT IX – DECLARATORY JUDGMENT – NO COVERAGE FOR PUNITIVE DAMAGES UNDER PENNSYLVANIA LAW

96. State Farm incorporates the preceding paragraphs of this Complaint as though set forth in full herein.

97. Pennsylvania law prohibits insurance carriers from indemnifying for direct punitive damages.

98. The Underlying Complaint seeks punitive damages against Huber.

99. Thus, State Farm has no duty to indemnify Huber for any punitive damages awarded in the Underlying Action, as such damages are uninsurable as a matter of law.

**WHEREFORE**, Plaintiff State Farm seeks judgment in its favor and against all others, including the following declaration:

a. State Farm has no duty to defend Huber in the Underlying Action under the Primary Policy or the Umbrella Policy;

b. State Farm has no duty to indemnify Huber in the Underlying Action under the Primary Policy or the Umbrella Policy; and

c. Any other relief the Court determines equitable or just.

21

**GOLDBERG SEGALLA LLP**

By:  */s/ Michael A. Hamilton*
    Michael A. Hamilton, Attorney ID #71266
    Colleen E. Hayes, Attorney ID #312154
    Mailing Address:
    P.O. Box 360, Buffalo, NY 14201
    1700 Market Street, Suite 3232
    Philadelphia, PA 19103-3907
    Telephone: 267-519-6800
    mhamilton@goldbergsegalla.com
    chayes@goldbergsegalla.com

Dated: June 23, 2026